IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

QUINN HANCOCK,

        Plaintiff,

        v.

CLEMENS MARINA, INC., an Oregon Domestic Corporation,

        Defendant.

Case No. 6:24-cv-488-MC

OPINION AND ORDER

**MCSHANE, Judge:**

This case involves the sale of a custom boat gone bad. By all accounts, it appears that a cyber-criminal hacked into email communications between the parties and provided false bank wiring information to the buyer. Unfortunately, the buyer wired funds to the fraudulent account and the seller refused to release the boat to the buyer. The seller, Defendant Clemens Marina, Inc., moves for summary judgment against Plaintiff Quinn Hancock's Unlawful Trade Practices Act (UTPA) claim. ECF No. 23. Because no reasonable jury could find that Defendant entered the agreement with the intent not to deliver the boat, Defendant's Motion for Partial Summary Judgment, ECF No. 23, is GRANTED.[1]

---

[1] Defendant does not move against Plaintiff's breach of contract claims. Those claims will proceed to trial.

1 – OPINION AND ORDER

# BACKGROUND

In September 2022, the parties entered into an agreement where Defendant would build Plaintiff a customized 2023 North River 23-foot Fastback boat and trailer for approximately $130,000. Reese Decl. Ex. 9; ECF No. 24. Pursuant to the agreement, Plaintiff paid Defendant a non-refundable deposit of $5,000. *Id.* In March 2023, Jesse McFarland—who entered the agreement on behalf of Defendant—emailed Plaintiff photographs "of your completed boat at the factory on the trailer." Reese Decl. Ex. 11. Additionally, McFarland informed Plaintiff that he hoped the boat would be delivered in the next week, at which point Defendant could start work on the boat's rigging. *Id.*

Over the next several weeks, the parties corresponded by email regarding information Plaintiff needed for title, insurance, and customs.[2] Reese Decl. Ex. 12–14. Until mid-April 2023, everything appeared to be proceeding as planned. At that point, however, things went off the rails. Although there are disputes regarding who sent certain emails, and where those emails came from, it is undisputed that on April 11, 2023, McFarland received the following email from qhanck@hotmail.com:[3]

> Hey Jesse,
>
> Customs broker is asking for the bill of sale and title for the trailer and the boat and any other paperwork.
>
> Thanks
>
> 403-629-0605
>
> Quinn

Reese Decl. Ex. 13.

---

[2] Plaintiff is a citizen of, and resides in, Canada.
[3] Plaintiff's email, qhank@hotmail.com, does not contain a "c" before the "k."

The parties do not evidently dispute that McFarland failed to realize that the above email was *not* sent from qhank@hotmail.com as with previous emails from Plaintiff.[4] However, that fact is not material to the pending motion. The Court includes some details regarding the apparently hacked emails to provide context to the reader regarding what went wrong and how these parties arrived in federal court.

At 10:31 a.m. on April 13, 2023, McFarland received another email from qhanck@hotmail.com stating: "It sounds like I'm going to need to get the Title for the boat and the trailer too."[5] Reese Decl. Ex. 15, 1. One minute later, Plaintiff emailed McFarland—from his actual email address qhank@hotmail.com—an identical message: "It sounds like I'm going to need to get the Title for the boat and trailer too." Reese Decl. Ex. 14. Approximately 45 minutes later, McFarland responded to the qhanck@hotmail.com email:

Hi Quinn,

> Please see the attached scans of the manufacturer's statement of origin on both the boat and trailer. I can't fill them out or mail them until I receive payment on the boat in full. I've gone ahead and attached our wire instructions as well so you can transfer the funds to take care of this step.

Reese Decl. Ex. 15.

The next morning, Plaintiff received an email from McFarland's email address stating:

> Please see the attached updated Wire Instructions and scans of the manufacturer's statement of origin on both the boat and trailer. I can't fill them out or mail them until I receive payment on the boat in full. Due to the issue of an account audit, we cannot accept any payments in that account for now, so please make the wire transfer to our other account with wells Fargo and ignore the initial details sent

---

[4] Perhaps more accurately, Plaintiff offers no evidence indicating Defendant was in on the hack. The only evidence submitted, including Plaintiff's own exhibits, indicates that Defendant was completely unaware of, and surprised by, the cyber criminal's actions.

[5] It is unclear if Plaintiff used two email addresses, if a hacker used the qhanck address containing the added "c," if a hacker infiltrated Defendant's internet server to send the messages, or something else entirely. It is possible that the parties will never learn the answers to those questions. Those facts, however, are simply immaterial to the Court's resolution of the pending motion.

3 – OPINION AND ORDER

> yesterday. I've gone ahead and attached our updated wire instructions so you can transfer the funds to take care of this step.
>
> Could you provide ETA on the payment.
>
> N.B. Our Updated wire instructions for payment is attached (Only Account number changed)
>
> Thanks!
>
> Jesse McFarland
> CLEMENS MARINA
> 503.492.7400

Reese Decl. Ex. 2, 1.

Despite searching for the above email in McFarland's computer, Defendant was unable to find any record of the above email on its computers or servers. Reese Decl. Ex. 4, 6–7.

Unfortunately, the wire instructions included in the second email were not, in fact, instructions to wire money into Defendant's bank account. It appears that a hacker slightly altered the wire instructions so any funds sent would go to them, not to the Defendant.

On April 17, 2023, the parties executed an updated, final purchase agreement, where Plaintiff agreed to pay $131,770.00 for the boat and trailer (minus the $5,000 deposit Plaintiff paid in September 2022). Reese Decl. Ex. 18. At 10:33 a.m. that morning, McFarland emailed Plaintiff the correct wire instructions. Reese Decl. Ex. 19. Approximately 30 minutes later, Plaintiff received an email stating that it came from McFarland's email address of jesse@clemensmarina.com. Reese Decl. Ex. 20. That email stated: "find attached the correct wire instruction for the wire transfer. Do not use the instruction you just attached in this email. N.B Use the instruction attached to this email only." *Id.* Defendant was unable to find this email on its server or McFarland's computer. Reese Decl. Ex. 4, 6–7.

The wire information included in the above email did not include information for Defendant's bank account. Although Plaintiff wired the outstanding balance of $126,770.00 according to the new instructions, Defendant never received the funds.

Ultimately, in February 2024, Defendant sold the boat to someone else "for about the same price" as they agreed to sell it to Plaintiff. Osborn Decl. Ex. 1, 31–32; ECF No. 26. Before Plaintiff filed this action, Defendant offered to refund Plaintiff's deposit. Ex. 33, 2. Defendant sold the boat despite never returning Plaintiff's $5,000 deposit. *Id.*

## STANDARDS

The court must grant summary judgment if there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue is "genuine" if a reasonable jury could return a verdict in favor of the non-moving party. *Rivera v. Phillip Morris, Inc.*, 395 F.3d 1142, 1146 (9th Cir. 2005) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if it could affect the outcome of the case. *Id.* The court reviews evidence and draws inferences in the light most favorable to the non-moving party. *Miller v. Glenn Miller Prods., Inc.*, 454 F.3d 975, 988 (9th Cir. 2006) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 552 (1999)). When the moving party has met its burden, the non-moving party must present "specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (quoting Fed. R. Civ. P. 56(e)). The mere existence of some alleged factual dispute will not defeat an otherwise properly supported motion for summary judgment. *Anderson*, 477 U.S. 242, 247–48. Rather, the non-moving party must proffer evidence that could reasonably affect the outcome of the suit. *Miller*, 454 F.3d at 988.

/ / / /

/ / / /

5 – OPINION AND ORDER

## DISCUSSION

Plaintiff bases his UTPA claim on ORS 646.608(1)(q). That statute provides that "[a] person engages in an unlawful practice if in the course of the person's business, vocation, or occupation the person . . . [p]romises to deliver real estate, goods or services within a certain period of time with intent not to deliver the real estate, goods, or services as promised." ORS 646.608(1)(q). Plaintiff's theory forming the basis of the UTPA claim is that "in or around February 2024, Defendant demonstrated an intent not to deliver the customized boat and trailer to Plaintiff by selling that boat and trailer to a different customer." Pl.'s Resp. 1; ECF No. 15. Plaintiff argues that "Defendant explicitly intended to keep Plaintiff's deposit when it sold the boat to someone else, despite its own policy that paying a deposit reserves that custom-build inventory for delivery." *Id.*

Throughout the Response, Plaintiff centers his UTPA claim around Defendant's intent at the time Defendant sold the boat to another customer, not at the time the parties ratified the agreement. *See* Resp. 3 ("In the FAC, Plaintiff asserted that by selling the boat at issue to another customer in or around March 2024, Defendant demonstrated an intent not to follow through with its delivery of the boat to Plaintiff as originally promised, in violation of ORS 646.608(1)(q); *see* Resp. 4 ("the unlawful act Plaintiff asserts as the basis for its Oregon UTPA claim occurred in or around February 2024 [when Defendant sold the boat]"); *see* Resp. 4 ("Plaintiff's UTPA claim only arose when Plaintiff learned that in March 2024, Defendant had sold the customized boat at issue that his original complaint sought through specific performance"); *see* Resp. 9 ("a reasonable jury could conclude that by selling the customized boat to another customer, Defendant intended not to deliver [the] boat to Plaintiff as it had promised.").

6 – OPINION AND ORDER

The fatal defect undermining Plaintiff's UTPA claim is that the relevant time period for the UTPA claim is when Defendant entered into the agreement to build and sell the boat and trailer for Plaintiff. Defendant entered into that agreement in late 2022 when it executed the purchase agreement with Plaintiff and accepted the $5,000 deposit. At the latest, Defendant entered into the agreement on April 17, 2023, when the parties signed the final purchase agreement reflecting the final specifications of the custom boat. *See* Reese Decl. Ex. 25. But, unlike Plaintiff, the Court does not consider Defendant's intent in February of 2024, well after the parties finalized the agreement at issue (and well after the circumstances had drastically changed).

State law requires this Court's conclusion that Defendant's intent in February of 2024 is immaterial. In *Rathgeber v. James Hemenway, Inc.*, 225 Or. 404 (2003), Plaintiffs sued their former realtor.[6] When that Defendant agreed to represent Plaintiffs, he provided Plaintiffs the required disclosure form confirming that he owed Plaintiffs, as their realtor, certain fiduciary duties including the duty to use "reasonable care and diligence" when assisting Plaintiffs with their home purchase. *Id.* at 407–08. As summarized by the Oregon Supreme Court:

> Plaintiffs alleged that defendants willfully represented to them that defendants' "services as buyer's agents had qualities of competence and diligence that [the services] did not have." According to plaintiffs, when Zobel told them that he would act as a buyer's agent on their behalf and gave them the disclosure form listing the fiduciary duties of a buyer's agent, he represented to them that he would fulfill that fiduciary duty competently and diligently. Plaintiffs assert that Zobel pressured them to close on the purchase of the property in spite of problems with the property and plaintiffs' concerns about it, and that he otherwise failed to act competently and diligently, as summarized above. Plaintiffs argue that defendants violated the UTPA by willfully representing that their services would have the qualities of diligence and competence of a buyer's agent when the services did not, in fact, have those qualities.

*Id.* at 409.

---

[6] Despite being directly on point, neither party cited *Rathgeber*.

7 – OPINION AND ORDER

Plaintiffs' UTPA claim centered around an alleged violation of ORS 646.608(1)(e). That statute "makes unlawful a representation that 'services have qualities or that a person has a qualification' that they do not, in fact, have." *Id.* at 411 (quoting ORS 646.608(1)(e) (cleaned up)). The Court noted that "[t]he problem with plaintiffs' argument is that the defendants' representations violated the UTPA only if, *at the time that they were made*, defendants knew or should have known that their services did not have the qualities defendants represented them to have." *Id.* at 412–13 (emphasis added). Because the Court's analysis is clearly determinative of the outcome here, the Court quotes a lengthy section of the analysis in *Rathgeber*:

> Thus, a private party who seeks to recover damages for a UTPA violation must plead and prove a "willful" violation of the statute by the defendant. "A willful violation occurs when the person committing the violation knew or should have known that the conduct of the person was a violation." ORS 646.605(10). Here, however, plaintiffs acknowledged that they had not submitted evidence that, at the time of Zobel's agreement to act as plaintiffs' buyer's agent, he knew or should have known that he would not perform his duties as a buyer's agent competently and diligently. That is, plaintiffs introduced evidence that Zobel breached his fiduciary duty by failing to provide services that had the qualities of competence and diligence, but they introduced no evidence that he knew or should have known that he would do so at the time that he made representations to plaintiffs regarding the qualities of his services.
>
> Amicus State of Oregon argues that the evidence of defendants' breach of fiduciary duty shows conduct so far out of compliance with that duty that the jury could infer that, at the time that Zobel represented that he would act as plaintiffs' buyer's agent and would provide the attendant quality of services, he did *not* intend to provide services of that quality. The state further argues that a single act of misconduct can be sufficient to support the finding of a UTPA violation. We agree that a single act of misconduct, in certain circumstances, can be sufficient to support a finding that an actor did not intend to act in compliance with a promise made. However, plaintiffs in this case twice acknowledged to the jury that the misconduct here would not support the conclusion that Zobel *knew or should have known* that he would breach his fiduciary duty *at the time of the representations* alleged in this case. Given those acknowledgments, plaintiffs were not entitled to have the jury consider their claim of a willful violation of the UTPA.

*Id.* at 413–14 (emphasis in original) (internal footnotes omitted).

8 – OPINION AND ORDER

Here, Plaintiffs present no evidence—because they do not even argue the point—that at the time Defendant promised to produce the boat, it intended to do anything other than build and then deliver the boat to Plaintiff. Instead, as demonstrated above, Plaintiff explicitly limits any argument related to Defendant's intent to early 2024 when Defendant decided to sell the boat to another customer. The context of the agreement, supported by deposition testimony submitted by Defendant, demonstrates that Defendant only decided not to produce the boat to Plaintiff after Plaintiff wired the remaining balance to the wrong account. The earliest possible date of Defendant's decision to withhold the boat from Plaintiff was April 2023, when the parties first realized that the wire did not, in fact, end up in Defendant's bank account.

But even the April 2023 date predates any change in Defendant's plans for the boat. The only evidence submitted on this point indicates that the Defendant "held onto [Plaintiff's] boat for, I think, a year [after April 2023] because we had not heard from [Plaintiff] and were unaware what his intentions were." Osborne Decl. Ex. 1, 19. Defendant continued to hold onto Plaintiff's boat, for "[m]onths and months and months," despite having "several parties that were interested in [buying] it." *Id.* Approximately one year after the wire failed to go through as planned, Defendant's owner called an employee and asked, "'Hey, have we heard from Quinn?' And he said, 'Nope.' And I says, 'Well, what's your take?' I said, 'You know, it's—we've been sitting on this hundred plus thousand dollar boat for a year, close to it.' And so we just made the decision to sell it." *Id.* at 20.

No rational jury could conclude that Defendant entered the agreement to build a custom boat for Plaintiff, a ready buyer, with no intention of following through on that promise. Plaintiff has merely established that at some point well after the boat was ready for final payment and subsequent delivery, Defendant decided not to deliver the boat to Plaintiff. Because Plaintiff fails

9 – OPINION AND ORDER

to produce any evidence indicating that Defendant *entered* the agreement intending not to produce the boat, Plaintiff's UTPA claim based on ORS 646.608(1)(q) necessarily fails.[7]

## CONCLUSION

Defendant's Motion for Partial Summary Judgment, ECF No. 23, is GRANTED. The parties shall confer and, withing seven days, provide the Court with proposed trial dates before the end of May 2026.

IT IS SO ORDERED.

DATED this 23rd day of December 2025.

_____/s/ Michael J. McShane_____
Michael McShane
United States District Judge

---

[7] Plaintiff's argument related to the deposit is a red herring. Even assuming that holding onto the deposit somehow breached the contract or Defendant's own policies, Defendant's decision to hold onto the deposit despite selling the boat came well after the parties entered into the agreement.

10 – OPINION AND ORDER